**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 26-** |
| **v.** | : | **DATE FILED:** |
| **DOMINIC ARTHUR** | : | **VIOLATIONS:**<br>**18 U.S.C. § 1341 (mail fraud – 6 counts)** |
| | : | **18 U.S.C. § 641 (theft of government money – 1 count)** |
| | : | **Notice of forfeiture** |

**INFORMATION**

**COUNTS ONE THROUGH SIX**
**(Mail Fraud)**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

**INTRODUCTION**

1. Defendant DOMINIC ARTHUR was a resident of Montgomery County, Pennsylvania.

2. Timeeka Loud, charged elsewhere, was a tax return preparer employed at a business called TNT Tax Professionals in Philadelphia, Pennsylvania.

3. TH3 GO 2 GUYZ was a limited liability company formed by defendant DOMINIC ARTHUR in or about December 2020. TH3 GO 2 GUYZ's purported business was home remodeling and small construction. Defendant ARTHUR did not report any earnings or expenses, including wages paid to employees, of TH3 GO 2 GUYZ on any income tax returns that he filed for tax years 2021 through 2022. Additionally, the Internal Revenue Service ("IRS") did not receive an IRS Form W-2 for any employees of TH3 GO 2 GUYZ for these tax years.

**The COVID-19 Relief Tax Credits**

4. The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), enacted on March 27, 2020, provided for an employee retention credit ("ERC") designed to encourage businesses to retain employees on their payroll during the COVID-19 pandemic. The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue Plan Act ("ARPA") modified and extended the ERC.

5. For calendar year 2020, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 50 percent of up to $10,000 of qualified wages paid to each employee from March 13, 2020 through December 31, 2020. The maximum ERC was $5,000 per employee for calendar year 2020. For calendar year 2021, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 70 percent of up to $10,000 of qualified wages paid to each employee during each quarter. The maximum ERC was $7,000 per employee per quarter for calendar year 2021.

6. Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down during 2020 or the first three calendar quarters of 2021 by government order due to the COVID-19 pandemic; (b) experienced a specified decline in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

7. The Families First Coronavirus Response Act provided for eligible employers to receive refundable tax credits for wages paid to employees while on sick leave to recover from any injury, disability, illness, or condition resulting from COVID-19 or wages paid to employees while on family leave to care for a family member who was injured, disabled, ill, or otherwise suffering from a condition due to COVID-19. Together these credits were called the

COVID-19 related tax credits, namely, the ERC and Qualified Sick and Family Leave ("QSFL") credit.

8. Employers were entitled to receive a dollar-for-dollar credit for qualified wages paid to an employee, plus allocable health plan expenses and the employer's share of Medicare taxes, while that employee was on sick leave resulting from COVID-19. This credit was limited to up to ten days of sick leave per employee for the period ending March 31, 2021. That resulted in a maximum credit of $5,110 per employee for that period. The ARPA provided an identical credit for the period from April 1, 2021 through September 31, 2021, with an identical maximum of $5,110 in credits per employee.

9. Employers were also entitled to receive a credit of up to two-thirds of the qualified wages paid to an employee while that employee was on family leave to care for a family member suffering from a condition resulting from COVID-19, plus allocable health plan expenses and the employer's share of Medicare taxes. For the period ending March 31, 2021, this credit was limited to up to $200 per day for up to ten weeks, resulting in a maximum eligible credit of $10,000 per employee. The ARPA provided an identical credit for the period April 1, 2021 through September 30, 2021, and extended the length of family leave to twelve weeks, thereby raising the maximum eligible credit for that period to $12,000 per employee.

**Form 941 Filings**

10. COVID-19 related tax credits were claimed by employers by filing an Employer's Quarterly Federal Tax Return, Form 941, or an Adjusted Employer's Quarterly Federal Tax Return or Claim of Refund, Form 941X (collectively and interchangeably, "Form 941," "Forms 941," or "Form 941s"), with the IRS for the relevant quarter or quarters.

11. Forms 941 reported the business name, its address, and the employer's Employer Identification Number ("EIN"), also known as the Federal Employer Identification Number or the Federal Tax Identification Number. Forms 941 also reported the number of employees that the business had and the wages paid by the business during that quarter.

12. Critically, in order to qualify for the ERC and related QSFL credit, the filing business must have paid employees during certain quarters during the COVID-19 pandemic. Moreover, for the QSFL credit, the filing business must have paid sick or family leave wages. Employers were not eligible to receive both the ERC and QSFL credit with respect to the same wages.

13. For the COVID-19 related credits, based on the amounts reported on the Form 941, the U.S. Treasury issued a check in the name of the employer identified on the Form 941 and mailed the check to the employer's address as it appeared on the Form 941. Each Form 941 represented a separate claim to the government.

14. The IRS relied on the information reported on the Form 941 filed for each quarter, or for each quarter in the event Form 941 was filed late, about the purported business' existence, number of employees, and wages paid to the employees to make the credit payments to employers.

15. Forms 941 could be electronically filed with the IRS using tax preparation websites, such as, in this case, TaxBandits.

16. . TaxBandits, a legitimate commercially available tax preparation software, was an online application primarily used to file Forms 941 with the IRS. The TaxBandits program captured a range of information about each Form 941 user and transaction. TaxBandits records identified: (i) the nature of each individual activity (*e.g.*, creating an account;

updating information; adding credit card information; and transmitting to IRS); (ii) the dates and time stamps of the activity; (iii) the Internet Protocol ("IP") address from which the activity originated; and (iv) the type of device and web browser used to access the TaxBandits software.

17. Upon receipt of each Form 941, TaxBandits sent an email to the submitter of the Form 941 and to the individual/entity that was identified as the employer on each Form 941. These emails included a link for four documents: a copy of the Form 941, a copy of Form 8453 Employment Tax Declaration for an IRS e-file Return, an online filing acceptance letter, and a receipt for payment of the TaxBandits filing fee.

**THE SCHEME**

18. From in or about February 2022 to in or about 2023, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DOMINIC ARTHUR**,

together with co-schemer Timeeka Loud, devised and intended to devise a scheme to defraud the IRS and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS**

It was a part of the scheme that:

19. On or about February 24, 2022, defendant DOMINIC ARTHUR and Timeeka Loud filed and caused to be filed false Forms 941 for TH3 GO 2 GUYZ TH3 for the second, third, and fourth quarters of 2021, seeking fraudulent refundable credits. These forms falsely stated, among other things, that TH3 GO 2 GUYZ had paid wages to five employees.

20. On or about February 25, 2022, defendant DOMINIC ARTHUR and Timeeka Loud filed and caused to be filed a false Form 941 for TH3 GO 2 GUYZ for the first

quarter of 2021, seeking fraudulent refundable credits. This form falsely stated, among other things, that TH3 GO 2 GUYZ had paid wages to five employees.

21. On or about August 29, 2022, defendant DOMINIC ARTHUR and Timeeka Loud filed and caused to be filed false Forms 941 for TH3 GO 2 GUYZ for the first and second quarters of 2022, seeking fraudulent refundable credits. These forms falsely stated, among other things, that TH3 GO 2 GUYZ had paid wages to seven employees.

22. On or about October 24, 2022, defendant DOMINIC ARTHUR and Timeeka Loud filed and caused to be filed a false Form 941 for TH3 GO 2 GUYZ for the third quarter of 2022, seeking fraudulent refundable credits. This form falsely stated, among other things, that TH3 GO 2 GUYZ had paid wages to five employees.

23. In total, over this period, defendant DOMINIC ARTHUR and Timeeka Loud sought approximately $1,207,016.13 in fraudulent tax refunds in the name of TH3 GO 2 GUYZ.

24. As a result of the filing of the false Forms 941 for the first, second, third, and fourth quarters of 2021 and the second and third quarters of 2022, defendant DOMINIC ARTHUR and Timeeka Loud caused the IRS to issue six U.S. Treasury checks totaling approximately $1,191,243.42 to TH3 GO 2 GUYZ from on or about July 26, 2022, to on or about November 29, 2022. Pursuant to the information entered on the fraudulent Forms 941, the IRS mailed these checks to defendant ARTHUR at his business address in King of Prussia, Pennsylvania.

25. From on or about July 29, 2022, to on or about December 7, 2022, defendant DOMINIC ARTHUR deposited the fraudulently-obtained U.S. Treasury checks and

proceeds of the checks into accounts that he controlled at Citizens Bank and JP Morgan Chase Bank.

26. On or about August 19, 2022, with the proceeds of the U.S. Treasury checks, defendant DOMINIC ARTHUR transferred approximately $70,100 to co-schemer Timeeka Loud.

27. From on or about July 29, 2022, to in or about 2023, defendant DOMINIC ARTHUR used the proceeds of the U.S. Treasury checks to, among other things, pay rent for expensive apartments, purchase cars and luxury items, and pay travel expenses.

28. On or about the dates set forth below, in Montgomery County, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DOMINIC ARTHUR**,

for the purpose of executing the scheme described above, knowingly caused to be delivered by mail according to the directions thereon, the mailings described below for each count, each mailing constituting a separate count, delivered from Kansas City, Missouri, to King of Prussia, Pennsylvania:

| Count | Tax Period | Approx. Mailing Date of U.S. Treasury Check | Business Entity | Amount of Check Issued |
|---|---|---|---|---|
| 1 | 1Q21 | 7/26/22 | TH3 GO 2 GUYZ | $252,032.99 |
| 2 | 2Q21 | 7/26/22 | TH3 GO 2 GUYZ | $200,289.70 |
| 3 | 3Q21 | 7/26/22 | TH3 GO 2 GUYZ | $200,289.70 |
| 4 | 4Q21 | 7/26/22 | TH3 GO 2 GUYZ | $200,289.70 |
| 5 | 2Q22 | 10/4/22 | TH3 GO 2 GUYZ | $169,123.01 |
| 6 | 3Q22 | 11/29/22 | TH3 GO 2 GUYZ | $169,218.32 |

All in violation of Title 18, United States Code, Section 1341.

**COUNT SEVEN**
**(Theft of Government Money)**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 17 and 19 through 27 of Count One are incorporated here.

2. From in or about early 2022 to in or about early 2023, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DOMINIC ARTHUR**

stole, purloined, and knowingly converted to his own use a thing of value of the United States in the amount of over $1,000, that is, six U.S. Treasury checks made payable to TH3 GO 2 GUYZ totaling approximately $1,191,243.42.

In violation of Title 18, United States Code, Section 641.

**NOTICE OF FORFEITURE**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 1341 and 641, set forth in this information, defendant

**DOMINIC ARTHUR**

shall forfeit to the United States of America any property, real or personal, constituting, or derived from, proceeds obtained traceable to such violations, including, but not limited to, $1,171,143.42.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(a) has been transferred or sold to, or deposited with, a third party;

(b) has been placed beyond the jurisdiction of the Court;

(c) has been substantially diminished in value; or

(d) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

Christine E Sykes for

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

DOMINIC ARTHUR

INFORMATION

18 U.S.C. § 1341 (mail fraud – 6 counts)
18 U.S.C. § 641 (theft of government money – 1 count)

A true bill.

______________________________
Foreperson

Filed in open court this ______________________day,
Of ________________A.D. 20__________

______________________________
Foreperson

Bail, $____________